In the Matter of the Estate of Wm. D. Mills, Deceased, Malcolm I. Frank, Appellant, v. Walter F. Sheehan, Former Public Administrator, Respondent.—183 S. W. (2d) 369.

St. Louis Court of Appeals. Opinion filed November 14, 1944.

Rehearing denied December 1, 1944.

Certiorari denied by Supreme Court January 2, 1945.

*Malcolm I. Frank, pro se.*

*Charles A. Lich* for respondents.

BENNICK, C.—This controversy arises over the application of Malcolm I. Frank for the allowance of an attorney's fee of $1,000 for services rendered by him in the defense of the final settlement filed by Walter F. Sheehan, former public administrator of the City of St. Louis, in connection with the latter's administration of the estate of Wm. D. Mills, deceased.

After the final settlement had been filed and acted upon in the probate court, there were two appeals from it to the circuit court, the one by Sheehan himself in which he complained of the action of the probate court in surcharging his account and in refusing to set aside its approval of the final settlement so that he might be allowed an additional credit which he had inadvertently overlooked in making

up his settlement as filed; and the other a joint appeal by the sole heir of the deceased and one Estelle Rudick, the assignee of a portion of the former's interest in the estate, in which they complained of the approval of the final settlement and the allowance of each and every credit therein.

When the two appeals came on for hearing in the circuit court, they were consolidated and tried together by agreement of counsel, with Frank representing Sheehan with respect to all the issues involved on both appeals.

The additional credit which Sheehan sought to have allowed was an item of $1800 comprising money which he had advanced on account of pay roll expenses in connection with his continued operation of the deceased's business under the order of the probate court. An examination of the books apparently satisfied opposing counsel that Sheehan had actually advanced the sum of $1800 for which he had neglected to take credit, with the result that there was no contest in the circuit court over his right to receive such additional credit in the final statement of his account.

The other question raised by Sheehan was whether the probate court had properly surcharged his settlement in the sum of $1946.93 upon the theory that he had taken credit for an excessive commission to that extent. In the statement of his account Sheehan had claimed a credit of $2972.95 for the commission due him as administrator, calculated upon the principal sum of $59,459 which had been disbursed in the course of his management of the estate. The question at issue between the parties in the circuit court was whether his commission should be computed upon the basis of the total amount of money passing through his hands in carrying on the deceased's business under the order of the probate court, or whether, instead, it should be computed upon the principal sum of $23,101.57, which comprised the net amount realized from the estate. The appealing heir and assignee, differing with both Sheehan and the probate court, contended for the latter, and argued that his commission should therefore be the sum of $1155.07.

During the course of the hearing in the circuit court, it was discovered that in preparing his final settlement, Sheehan had inadvertently neglected to charge himself with a cash collection of $1020.22. When the error appeared, Sheehan frankly admitted his mistake, and consented that the court's judgment should direct that he be charged accordingly.

The chief point raised by the joint appeal of the deceased's sole heir and her assignee was that in making up his final settlement, Sheehan had wrongfully taken credit for losses aggregating some $11,000 which had been sustained by him in conducting the operation of the deceased's business during the period of the administration. The question sought to be raised in that connection was whether the

losses had been due to Sheehan's negligence in the operation of the business so as to have precluded him from the right to take credit for them in finally settling the estate. Sheehan countered with the insistence that the heir and her assignee had failed to raise the point by specific exceptions to the final settlement in the probate court; and that by reason of their failure to have filed exceptions so as to have required that the matter be expressly litigated in the probate court, there was no issue of his negligence to be tried anew upon the hearing of the case in the circuit court.

At the conclusion of the case the circuit court entered judgment that Sheehan be allowed the additional credit of $1800 representing pay roll expenses which he had advanced but for which he had inadvertently neglected to take credit; that he be given credit for a commission in the full sum of $2972.95; that he be charged with the cash collection of $1020.22 which he had inadvertently neglected to include in his final settlement; and that in all other respects the final settlement be approved as filed. This latter provision meant, of course, that even though the decision may have turned upon a question of procedure, the result was at least in favor of Sheehan, and against the heir and her assignee, with respect to the matter of Sheehan's right to have taken credit for the losses of $11,000 which he had incurred in the operation of the deceased's business under the order of the probate court.

From the judgment thus entered, Estelle Rudick alone appealed to the Supreme Court, which heard the case and in due time handed down its opinion, which is reported as In re Mills' Estate, 349 Mo. 611, 162 S. W. (2d) 807.

A reading of that opinion will disclose that the only matters sought to be reviewed in the Supreme Court were, first, the question of Sheehan's right to have taken credit for the losses of $11,000 which he had incurred in the operation of the deceased's business; and second, the amount of the commission which he was entitled to receive. As for the first of such matters, suffice it to say that the Supreme Court sustained Sheehan's contention with respect to the necessity for the filing of exceptions to the items of a final settlement about which there is dispute, and held that for the want of such exceptions in the probate court specifically raising the issue of Sheehan's negligence in the operation of the business, there had been no such question to be tried anew at the hearing of the case in the circuit court. However, as regards the other proposition, the court ruled adversely to Sheehan, and held that his commission, instead of being the sum of $2972.95, calculated upon the total amount of money passing through his hands, should be reduced to $1155.07, calculated upon the net amount realized from the estate.

The error in the calculation of Sheehan's commission necessarily required that the judgment be reversed and the cause remanded so

that a propr adjustment might be made in the final settlement; and when the mandate came down, the circuit court entered up a new judgment conforming with the Supreme Court's decision regarding the reduction in the item of commission, but making no change with respect to the other matters which had been previously adjudicated. The result was thereupon certified to the probate court; and shortly thereafter Frank appeared in the probate court and filed his application therein for the allowance of a fee for his services in defense of the final settlement.

The probate court denied and dismissed the application upon the ground that inasmuch as the judgment certified to it by the circuit court had contained no direction for the allowance of an attorney's fee, it was without authority to entertain such an application, the theory being that in all subsequent proceedings in the probate court after the determination of the two appeals which had been taken from the final settlement, it could take no action with regard to the final settlement except as specifically directed by the circuit court.

From the judgment thus entered in the probate court, Frank took an appeal to the circuit court, which likewise denied and dismissed his application. A motion for a new trial was thereupon filed; and this being overruled, his appeal to this court has followed in the usual course.

It may be noted in passing that while Sheehan appears as the nominal respondent because of his status as the administrator in charge of the estate out of which the allowance would be made, the persons actually resisting the application are certain creditors of the estate, whose adverse interest lies in the fact that any allowance made to Frank, being admittedly an expense of administration, would take priority over their respective claims (Sec. 224, R. S. Mo. 1939, Mo. R. S. A., sec. 224), and would largely consume the balance of the estate now available for the payment of debts and expenses.

There is no dispute about the basic proposition that an attorney's fee for services rendered in defending a final settlement, where the defense was necessary or beneficial to the estate, is such an allowance as is contemplated by Section 220, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 220, which provides that in all settlements of executors or administrators, the court shall allow, among other things, all reasonable charges for "legal advice and service". On the contrary, the chief controversy is over the question of how the court's jurisdiction shall be invoked for the purpose of securing such an allowance, where the services were not restricted to the defense of the final settlement in the probate court, but also embraced its defense in the circuit court as well as in the Supreme Court to which the case was taken.

After an appeal has been determined in the circuit court, the statute requires that the circuit court shall certify a transcript of its record

and proceedings to the probate court, which shall then proceed "according to the decision of the circuit court". [Sec. 293, R. S. Mo. 1939, Mo. R. S. A., sec. 293.] Does it follow from this that after the judgment of the circuit court has been rendered and certified to the probate court, the latter, being bound to proceed according to the decision of the circuit court, may not entertain an application for the allowance of an attorney's fee unless there has been a specific direction to that effect in the judgment certified to it by the circuit court, or is the matter one within the original jurisdiction of the probate court, which it may exercise notwithstanding the appeal, and without a direction from the circuit court?

In the case at bar, the probate court took the former view, which was apparently concurred in by the circuit court on Frank's appeal from the order denying and dismissing his application. If this view should be correct, it would mean, of course, that for Frank to have secured the allowance of a fee for his services, it would have been necessary that he should have filed his application in the circuit court, and have either had the same allowed in that court, or else certified to the probate court for allowance. Frank argues, on the other hand, that not only did the probate court have jurisdiction to make the allowance, but that its jurisdiction to entertain his application was in nowise dependent upon a direction from the circuit court. The main question for our determination is therefore one of defining the extent of the probate court's jurisdiction in such respect, though with it is also the further question of whether the result of the litigation in the particular instance would in any event foreclose the right to a fee.

While there is no dearth of authority in this State upon the proposition that a reasonable attorney's fee for services performed in the defense of a final settlement is a proper cost of administration for which the executor or administrator is entitled to receive credit, there is no case, so far as we are advised, which explicitly discusses and determines the question which is the bone of contention in the case at bar.

In Jacobs v. Jacobs, 99 Mo. 427, 12 S. W. 457, which is the forerunner of the line of cases upholding the right to such an allowance as a proper charge against the estate, it appears that the circuit court itself made an allowance for attorney's fees in defending the final settlement in both the probate and the circuit court, and that when the case reached the Supreme Court on the exceptors' appeal, the Supreme Court found that no error had been committed in the allowance made by the circuit court. While this case obviously presupposes that jurisdiction exists in the circuit court, not only to entertain the application for a fee, but even to go so far as to make the allowance, it does not hold that the circuit court's jurisdiction is exclusive in such respect; nor does it decide that where there has been an appeal from the final settlement, any subsequent allowance in the probate court will be

solely dependent upon an express direction in the judgment certified to it by the circuit court.

In the case of In re Estate of Meeker, 45 Mo. App. 186, a decision of this court which was rendered some two years after the decision in Jacobs v. Jacobs, *supra,* the application for an allowance was presented to the circuit court, and when that court erroneously disallowed the application, the error was corrected in this court by directing that the judgment of the circuit court should be so modified as to authorize the probate court to make an allowance of a reasonable fee for defending the settlement in the circuit court. After the latter had denied the application, the probate court would of course have been powerless to have made an allowance if the circuit court's judgment had not been reversed or modified on appeal; and in this situation it was obviously necessary that the circuit court's judgment be altered in such a manner as to permit the probate court to make the allowance. However, the decision does not hold that in cases where the question of the allowance is not litigated in the circuit court, the probate court will be foreclosed from making an allowance except upon direction from the circuit court; and indeed the significance of the decision lies in its express recognition of the fact that the making of the allowance is properly the prerogative of the probate court, rather than of the circuit court, which, in that particular instance, had presumed to act upon the application.

In Skinner v. Whitlow, 184 Mo. App. 229, 167 S. W. 463, a still later decision of this court, the circuit court had allowed an attorney's fee for the defense of the final settlement in that court. The issue raised on the appeal was whether, in view of the questions involved in the litigation, the allowance constituted a proper charge against the estate. It was held that while a fee was properly allowable for services rendered in defending the settlement against exceptions to credits taken by the administrator, the latter himself should bear that portion of the expense which had been incurred in the furtherance of his own personal interest, and was not for the benefit of the estate. Concluding, therefore, that the allowance in gross had been improper, and that the charge should be apportioned as between the estate and the administrator personally, this court vacated the order of the circuit court "without prejudice to the right of respondent [the administrator] to apply to the probate court for the allowance of such attorney's fees as in the opinion of that court should be allowed for defending the final settlement against the exceptions which pertain alone to the credits taken by respondent therein". Thus the whole question was committed to the probate court, with that court left free to exercise its own discretion without any direction from the circuit court, and without any limitation upon its jurisdiction, save only that in the event the administrator did make application for

credit for a fee, the allowance should be confined to. that portion of the services which had been performed for the benefit of the estate.

In the case of In re Flynn's Estate (Mo. App.), 177 S. W. (2d) 694, an attorney had defended a final settlement in both the circuit court and in this court, and upon the termination of the litigation had applied to the probate court for the allowance of a fee. Just as in this case, there had been no application to the circuit court, and no direction from the circuit court with respect to the charge for the attorney's services. The application was denied by the probate court, and successive appeals brought the matter before this court, where the attorney was upheld in his right to a fee except as to those services which had been performed in the furtherance of his own personal interest. There was no point raised, at least in this court, regarding the right of the probate court to have made an allowance in the absence of a direction from the circuit court, but instead the sole question in dispute between the parties was whether the result of the litigation, and the attorney's personal interest in connection therewith, should have barred his right to the allowance of a fee. If any portion of his services had been for the benefit of the estate, there was no challenge of the procedure by which he had sought to have his claim allowed; and the only pertinency of that decision is its implied assumption of the jurisdiction which has been denied in the case at bar.

If the question was entirely one of first impression, there would be sound logic for holding, not only that the probate court has full jurisdiction to make the allowance without direction from the circuit court, but indeed that the matter is one over which the circuit court should have no original jurisdiction whatever.

It is to be borne in mind that when an appeal is taken from the probate court, the circuit court's jurisdiction is purely derivative, and fundamentally embraces only the specific matters which were litigated and fought out in the probate court from which the appeal was taken. [In re Mills' Estate, *supra*.] Along with other matters arising on settlements, the matter of the allowance of all reasonable charges for legal advice and service has been expressly committed to the probate court. [Sec. 220, *supra*.] Nor does such an allowance go as a matter of course, but instead there must be a judicial determination of whether the services were necessary or beneficial to the estate, and of what their reasonable value might be. Thus it would seem, on principle at least, that the question of the allowance of an attorney's fee should be a matter to be initially presented to and litigated in the probate court as the court of original jurisdiction (Stephens v. Cassity, 104 Mo. App. 210, 77 S. W. 1089), and that the circuit court's jurisdiction, being derivative and appellate, should be confined to the hearing anew of the matter previously heard in the probate court.

There is, nevertheless, no denying the fact that according to established precedent in this State, the circuit court does have jurisdiction to make an allowance of an attorney's fee for services performed in defending a final settlement. This does not mean, however, that the probate court does not have a like jurisdiction while the case is in its hands, nor that it is dependent, in the exercise of its jurisdiction, upon a direction from the circuit court.

When it is said that a final settlement becomes final and conclusive upon the lapse of the term at which it was approved, what is meant is that it becomes final and conclusive as to all matters which were properly included, and necessarily involved, in the making of the final settlement. [State ex rel. Pountain v. Gray, 106 Mo. 526, 17 S. W. 500; Young v. Byrd, 124 Mo. 590, 28 S. W. 83.] However, services performed in defending a final settlement cannot, in their very nature, be rendered until after the settlement has been made; nor can it be determined whether the services were necessary or beneficial to the estate until the defense of the settlement has been finally concluded. Consequently, when such an expense of administration is incurred, the final settlement must of necessity be amended so as to show credit for such additional expense, and this without regard to whether the charge was allowed in the circuit court or in the probate court.

It is unquestionably true that when the circuit court determines an appeal and certifies its judgment to the probate court, the latter must proceed thereafter according to the decision of the circuit court. This only means, however, that the probate court must proceed according to the decision of the circuit court with respect to matters adjudicated by the circuit court within the proper exercise of its jurisdiction, and does not mean that the probate court is to be denied the right to exercise its own jurisdiction with respect to matters not adjudicated by the circuit court, and therefore not embraced in its direction. The jurisdiction of the probate court continues in effect until the order discharging the personal representative or other final order is regularly made of record. [Ross v. Pitcairn (Mo.), 179 S. W. (2d) 35.] We have already shown that regardless of the concurrent jurisdiction of the circuit court, the probate court is itself invested with jurisdiction to make an allowance of an attorney's fee for defending a final settlement. The result is, therefore, that in a case where the circuit court assumes to act upon the fee and certifies the result to the probate court, the latter must proceed according to the decision of the circuit court, but that where the circuit court has made no adjudication upon the question, the subsequent jurisdiction of the probate court is unaffected by the lack of a direction from the circuit court. Consequently, if a timely application is thereafter made to the probate court, it may properly entertain the same, and if it finds that the services were necessary or beneficial to the estate, make such

an allowance as may be reasonable with regard to the character of the services performed.

Frank's application was therefore not to be denied upon the ground of the probate court's lack of jurisdiction to entertain it, and the only remaining question is whether the result of the litigation should bar his right to the allowance of a fee.

While the courts of some states deny the right to a fee unless the final settlement is sustained in its entirety, the courts of this State reject any such extreme position, and instead align themselves with the better view that even though certain credits be disallowed, an attorney's fee will none the less be a proper charge against the estate, if it appears that the executor or administrator has discharged his duties in good faith, and in the main has rendered a true accounting of his trust. [Jacobs v. Jacobs, *supra*; Skinner v. Whitlow, *supra*; In re Flynn's Estate, *supra*.]

In the case at bar, Sheehan ultimately prevailed upon all contested items except the item of his commission, which involved the doubtful legal question of whether, having been directed by the probate court to continue the operation of the deceased's business, his commission should be calculated upon the total amount of money passing through his hands, or simply upon the net amount realized from the estate. There is no basis for suggesting that he acted in bad faith, even if improvidently in some respects; nor does it militate against the allowance of a fee that he failed to sustain a legal proposition which was an open question in this State. It should be observed, however, that in fixing the amount of an allowance, there can be no charge against the estate for services rendered in connection with Sheehan's own appeal by which he was permitted to take credit for the item of $1800 which he had inadvertently omitted from his settlement as filed. This for the reason that such portion of the services were rendered in Sheehan's own personal interest, and not for the benefit of the estate. [Skinner v. Whitlow, *supra*.]

While it is true that there was no evidence offered in contradiction of Frank's evidence respecting the value of his services, the question of what the fee should be is nevertheless one of fact, which should be determined in the first instance by the court below.

The Commissioner accordingly recommends that the judgment rendered by the circuit court be reversed and the cause remanded for further proceedings in accordance with the views herein expressed. The costs of the appeal are to be taxed in favor of appellant, Frank, and against Standard Oil Company of Indiana and International Mack Truck Company, the creditors of the estate who have opposed the application for the allowance of the fee.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is,

accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. The costs of the appeal are to ·be taxed in favor of appellant, Frank, and against Standard Oil Company of Indiana and International Mack Truck Company, the creditors of the estate who have opposed the application for the allowance of the fee. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.